1

2

3

4

5

6                   UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
7                              AT SEATTLE

8    MUSSIE E. WELDEYOHANNES,

9                          Plaintiff,              CASE NO. 3:23-cv-05526-JCC-BAT

10         v.                                      **REPORT AND
                                                   RECOMMENDATION**
11   STATE OF WASHINGTON, et al.,

12                         Defendant.

13         Plaintiff, Mussie E. Weldeyohannes, proceeds *pro se* and *in forma pauperis* in this action

14   brought pursuant to 42 U.S.C. §1983, the Americans with Disabilities Act (ADA), and the

15   Rehabilitation Act (RA). Plaintiff names as Defendants: Washington Corrections Center (WCC),

16   agency of the Department of Corrections (DOC); John Lee, Sergeant at WCC; Stephen Veres,

17   Sergeant at WCC; Kyle Gonthier, Sergeant at WCC; Keith Malone, Corrections Officer (C/O) at

18   WCC; Olson-Ward, Nurse at WCC; Jeffrey Howard, C/O at WCC; Jordan Baleto, C/O at WCC;

19   and Adam Lee, C/O at WCC. Dkt. 10. Plaintiff alleges Defendants violated his rights under the

20   ADA, the RA, and the Eighth Amendment when, on February 15, 2023, they failed to provide

21   him with special transport to a new facility, despite his disability and medical issues, and used

22   excessive force in shackling and physically moving him onto the regular transport bus. *Id.*

23   Defendants have moved for summary judgment. Dkt. 29. Plaintiff opposes the motion. Dkt. 33,

34. Defendants have filed a reply. Dkts. 35, 36.

For the reasons below, the Court recommends that Defendants' motion for summary judgment (Dkt. 29) be GRANTED with respect to Plaintiff's Eighth Amendment medical care claim against Defendant John Lee only and that that claim be DISMISSED with prejudice. The Court recommends that Defendants' motion for summary judgment (Dkt. 29) be DENIED in all other respects but that it be DENIED without prejudice with respect to Plaintiff's Eighth Amendment excessive force claims against the individual Defendants.

## BACKGROUND

Plaintiff's amended complaint alleges in Count I "Plaintiff's Denial of reasonable accommodation Special Transport Eighth Amendment violation under ADA/RA Title II of American Disabilities Act Section 504 Discrimination." Dkt. 10 at 6-14. Plaintiff's allegations revolve around his transport during his transfer from WCC to Washington State Penitentiary (WSP) on February 15, 2023. *Id.* Plaintiff alleges he is a mobility impaired. *Id.* He states he has had a medical order not to climb stairs since 2019 and, at the time of his transfer he had a Health Status Report (HSR) for a wheelchair and a "code five" indicating he needed special transport. *Id.* Plaintiff alleges on February 1, 2023, he sent a message to the "CPM" , "Captain" and to the "medical health department" regarding special transport because he cannot climb stairs but that he received no response.[1] *Id.*

Plaintiff alleges that the DOC agency knew he had long-term preexisting conditions including back pain injury, chronic leg pain, causing him difficulty climbing stairs and pain when using stairs. *Id.* at 12-13. He states he cannot stand or walk on his own. *Id.* Plaintiff contends Defendant WCC-DOC violated his ADA rights to be transported by van rather than by

---

[1] Plaintiff states he is not suing the CPM or Captain but is suing "WCC-DOC agency." Dkt. 10 at 7, 10.

bus, forcing him to climb several steps "carried by correctional emergence response team (CERT)." *Id.* at 11, 13. He alleges the failure to provide him with the reasonable accommodation for special transport exacerbated his back injury and caused him extreme pain from his knees and broken shoulder and that he had to seek further treatment when he arrived at WSP. *Id.* at 13-14.

Count II of the amended complaint alleges "excessive force claim under the Eighth Amendment against eight (8) Defendants individually." *Id.* at 15-24. Plaintiff alleges on February 15, 2023, when he was transported by bus, he first encountered Defendant Nurse Olson-Ward who took his vital signs. *Id.* at 15. Plaintiff contends he informed Nurse Olson-Ward he had a "wheelchair HSR, orders not to climb stairs and lower tier." *Id.* He indicates Nurse Olson-Ward told him that she would speak to him later. *Id.*

Plaintiff alleges he next met with Sgt. Lee and told him he had "a wheelchair HSR, since 2020 for lower tier due to chronic back injury and legs" and that he was not able to walk or stand. *Id.* at 16. Sgt Gonthier, and Nurse Olson-Ward at some point joined Plaintiff and Sgt,.Lee, and wheeled Plaintiff in his wheelchair to the bus and told him they would help him climb the bus stairs. *Id.* Plaintiff contends he told the Sergeants he could not get on the bus due to pain in his back, legs and shoulder, and the sergeants threatened to put Plaintiff into the "hole." *Id.* Plaintiff was then wheeled back to the holding area and Sgt. Lee contacted Lieutenant Brooks to notify him of the situation. *Id.* at 17.

Defendant Sgt. Stephen Veres then arrived to "negotiate" with Plaintiff about getting on the bus and Plaintiff repeated what he had told the other Defendants regarding his medical issues. *Id.* Plaintiff told Sgt. Veres to look at the "HSR" in the computer or to unload his boxes and locate the HSR therein. *Id.* Sgt Veres looked at the computer and reported he could not find

1    Plaintiff's HSR. *Id.* Plaintiff responded he is in a wheelchair and thus has a HSR and had

2    requested special transport before February 15, 2023. *Id.* Within a few minutes, Plaintiff alleges

3    a "Correctional Emergency Response Team" (CERT) arrived. *Id.* at 18. Plaintiff states he told

4    the CERT about his medical conditions and that he could not stand. *Id.* He states members of the

5    CERT grabbed Plaintiff by the elbows and feet, picked Plaintiff up from his wheelchair, carried

6    Plaintiff face-down, handcuffed and leg-chained while Plaintiff screamed in pain and asked them

7    to stop. *Id.* The CERT then dragged him, picked him up and dropped him and then half-carried

8    and half-dropped Plaintiff onto the bus. *Id.* Plaintiff alleges the eight named individual

9    Defendants (Sgt. John Lee, Sgt Stephen Veres, Kyle Gonthier, Keith Malone, Nurse Olson-

10    Ward, Jeffrey Howard, Jordan Baleto, and Adam Lee) violated Plaintiff's rights by using

11    excessive force to get him onto the transport bus. *Id.* at 18-19.

12        Plaintiff alleges Defendants infracted him for the incident and the infraction was upheld

13    through all three levels of appeal. *Id.* at 24. However, Plaintiff indicates he filed a complaint with

14    the Office of Corrections Ombuds and an investigation concluded Plaintiff had a code 5

15    requiring special transport and that Plaintiff had made no threats against Defendants. *Id.* The

16    major infraction was "dropped." *Id.*

17        In Count III Plaintiff alleges Nurse Olson-Ward and the other named individual

18    Defendants violated his Eighth Amendment rights to medical care by denying Plaintiff special

19    transportation and forcibly carrying him onto the regular bus when they knew Plaintiff was in a

20    wheelchair and had an HSR order. *Id.* at 24-25. Plaintiff alleges Nurse Olson-Ward told the other

21    Defendants, at some point, that Plaintiff did not have a wheelchair HSR. *Id.* Plaintiff states that

22    the fact he had a wheelchair meant he necessarily had an HSR, that he told Nurse Olson-Ward he

23    had such an HSR and about his chronic knee pain, back injury, and broken shoulder. *Id.* He

alleges Nurse Olson-Ward had immediate access to a computer containing his medical records and that she could have looked up his medical records or called her supervisor or Plaintiff's physician assistant to find out whether he had an HSR order not to climb stairs and to be in a wheelchair, and whether or not he had the chronic physical medical conditions he identified. *Id.* at 26-28. Plaintiff alleges Defendants' actions caused him to experience additional pain and to seek further treatment, increase his medication dose and change medication, and exacerbated his preexisting PTSD. *Id.*

As relief, Plaintiff seeks compensatory damages of $50,000.00 and for the "agency or entity" to provide him a reasonable accommodation for special transport during transfers or hospital trips. *Id.* at 29.

Defendants move for summary judgment arguing that Plaintiff had a "T-1" transport code on the date of his transfer -- indicating he could board the regular transport bus -- and that Plaintiff's HSRs did not indicate he was unable to claim any stairs. Dkt. 29. They argue Defendants reasonably relied on the medical records before them, used only *de minimis* appropriate force in moving Plaintiff onto the bus, and did not violate Plaintiff's ADA, RA, or Eighth Amendment rights. *Id.* Defendants also argue they are entitled to qualified immunity. *Id.* Plaintiff opposes Defendants' motion. Dkts. 33, 34.

## RELEVANT EVIDENCE

In support of their motion for summary judgment, Defendants submit the declarations of Robert Long (Operational Capacity and Transportation Administrator for DOC), Defendant Kyle Gonthier (Sergeant), and Frank Longano (DOC Chief Medical Information Officer), a copy of the Use of Force Report, LOG #021523-1, IMRS# 23-105959, a copy of an Initial Serious

1    Infraction Report related to this incident, and a copy of an incident report dated February 15,

2    2023, related to Plaintiff's arrival at WSP. Dkts. 30, 31.

3        In his declaration, Robert Long indicates that the DOC has regular scheduled transport

4    buses that transfer DOC inmates from facility to facility and to local jails. Dkt. 30. He indicates

5    for individuals with medical, mental, and/or physical limitations, specially equipped vehicles are

6    not always required. *Id.* He states special accommodation for individuals in a wheelchair are only

7    utilized when the individual is unable to ambulate into vehicle or buses for transport. *Id.* He

8    states that prior to determining whether a specially equipped vehicle is needed, staff review the

9    incarcerated individual's transfer code (T code) which provides necessary information from

10   medical providers. *Id.* He states that on February 15, 2023, Plaintiff had a "T-1" T code which

11   would have indicated that he could ambulate into a vehicle or bus for transport without the need

12   for a specially equipped vehicle. *Id.* He states the incident report from Plaintiff's arrival at WSP

13   confirmed that he was able to walk down the stairs of the transport vehicle with little assistance

14   and also walked to the Health Services building. *Id.*

15       The incident report related to Plaintiff's arrival at WSP states, in relevant part, that

16   Plaintiff "stood up when called forward, and appeared to be unstable with his balance. Sgt.

17   Bailey … helped [Plaintiff] walk down the stairs of the bus to make sure he didn't stumble or

18   fall. He was escorted to the fence  … [and] West complex Response and Movement walked him

19   into the Health Services Building[.]" Dkt. 30-1.

20       In his declaration Defendant Kyle Gonthier states he was the Team Leader and

21   responsible for operating the video during the Use of Force incident on February 15, 2023. Dkt.

22   31. He states that on February 15, 2023, Plaintiff was refusing to board the bus and transfer. *Id.*

23   He states an "unsuccessful attempt was made to negotiate with him and gain his compliance to

REPORT AND RECOMMENDATION - 6

board the bus voluntarily" at which point a team was directed to physically place Plaintiff on the transport bus. *Id.* He states, after receiving authorization from the Associate Superintendent for a pre-planned use of force, the team responded and again tried to gain compliance from Plaintiff, but he again refused to board the transport bus. *Id.* He states they then applied straight chains and escorted Plaintiff to the transport bus in his wheelchair. *Id.* Plaintiff refused to stand and walk up the steps to the transport bus and the team "picked him up and carried him onto the bus." *Id.* He continued to present as 'dead weight' refusing to walk." *Id.* He was then secured in the transport bus holding cell. *Id.* He states that other than his refusal to board the bus Plaintiff provided no other comments. *Id.* He states that "[a]t no time during the teams [sic] interaction with [Plaintiff], were we ever informed or had concerns that he was physically unable to board the transport bus on his own." *Id.* He states "while an incarcerated individual may present in a wheelchair, it does not necessarily mean that they are completely immobile. *Id.* There are incarcerated individuals who may use wheelchairs to provide assistance in mobility for longer distances such as getting from a housing unit to a receiving unit." *Id.*

In his declaration, Dr. Longano states that incarcerated individuals who require an accommodation due to a serious medical need will have a Health Status Report (HSR) issued by medical staff documenting the medically necessary device(s) or specific accommodation. Dkt. 36. He states that this information is entered into the individual's electronic file, and they are provided with an HSR copy. *Id.* He states that the intention of a lower tier HSR is to excuse patients from walking up full flights of steps but that this does not mean they cannot walk up a step or two steps. *Id.* He states that in those cases where a patient cannot walk up any steps, a "no steps" HSR is issued. *Id.* He further states that a wheelchair HSR is not always indicative of a patient not being able to walk and there are times when a wheelchair HSR is issued for

1    individuals who cannot walk long distances but have the ability to walk shorter distances. *Id.* He

2    states that only the medical provider may change the patient's "T-Code" to indicate a special

3    transport is required. *Id.* He states a "T-1" code indicates that the medical provider believes the

4    individual can get themselves onto the transport bus while a "T-5" code is entered by the medical

5    provider only when a patient requires a wheelchair van or another special transport vehicle. *Id.*

6       The Use of Force Report contains a statement from Defendant Keith Malone indicating

7    that he "maintained control of [Plaintiff's] left shoulder and left wrist while guiding [Plaintiff to

8    his knee]" and that "[Defendant] Jordan Baleto applied straight chain restraints." Dkt. 30-1 at 18.

9    Defendant Malone's statement further indicates that "[Plaintiff] resisted multiple staff directives

10   and was demonstrating passive resistance by causing his body to go limp" and that Defendant

11   Malone "lifted [plaintiff] by placing my arm under his armpit, assisting him onto the bus and to

12   prevent staff injury." *Id.* The Report contains a statement from Defendant Jeffrey Howard that he

13   "assisted [Defendant] Baleto [in applying restraints] by holding [Plaintiff's] wrist[.]" *Id.* at 20-

14   21. He states that Plaintiff "displayed passive resistance by making his body go limp prior to

15   being placed onto the bus" and that he "placed both hands around his ankle and leg area to lift

16   [Plaintiff]" and that he and Defendant Malone "lifted [Plaintiff] up each step until he was safely

17   placed into the bus entrance holding area." *Id.* at He states that "[Plaintiff] was placed in a supine

18   position in front of the cell and then lifted up and into the bus holding cell." *Id.*

19      The Report contains a statement from Defendant Stephen Veres that he attempted to

20   negotiate with Plaintiff to get him to comply with getting on the bus willingly but that the

21   "negotiation failed" and that he provided camera coverage of the use of force incident.[2] *Id.* at 24.

22

23   _____
     [2] The Court notes there appears to be a discrepancy between whether Defendant Veres or Defendant
     Gonthier operated the camera during the use of force incident. The Court also notes that the video of the
     incident was also not submitted by either party and is not before the Court.

1    The Report contains a statement from Defendant Adam Lee who states that he moved the

2   wheelchair out of the way while straight chain restraints were applied and then removed the

3   wheelchair again when the escort team came to the door of the bus and assisted Plaintiff onto it.

4   *Id.* at 25.

5    The Report contains a statement from Defendant Baleto who states he placed mechanical

6   straight chain restraints on both the wrists and ankles of Plaintiff and that after Plaintiff was

7   placed back in the wheelchair, he pushed him to the transport bus. *Id.* at 26.

8    The Report contains a statement from Defendant Nurse Olson-Ward who states that she

9   "noted careful restraint application and transfer of [Plaintiff] from the wheelchair to the holding

10  cell on the transport bus by custody officers." *Id.* at 28. She states that "upon observing Plaintiff

11  after being placed on the bus, he presented no visual concerns to this nurse" and "verbally

12  responded to this nurse checking on his well being and voiced no complaints at that time." *Id.*

13  She also states that "medical risk evaluation done prior to planned use of force and verified by

14  RN2 in infirmary nurses station[.]" *Id.*

15   There is also a copy of an initial serious infraction report related to this incident which

16  states that Defendant John Lee made contact with Plaintiff in the holding area and Plaintiff

17  "stated that he was refusing transport to WSP because he was in a wheelchair and was unable to

18  be transported by the Facility chain bus." *Id.* at 33. The infraction report states that Defendant

19  John Lee "spoke to medical staff Olson-Ward and medical had no concerns with this individual

20  being transported on the bus." *Id.* The infraction report states that Defendant John Lee gave

21  Plaintiff multiple directives to comply with the transport process and he refused. *Id.* Defendant

22  John Lee then contacted the Shift Lieutenant Brooks, Defendant Veres was deployed to

23

negotiate, and when Plaintiff refused to transfer a pre-planned use of force was established to place Plaintiff on the bus. *Id.*

Plaintiff's statements (sworn to under penalty of perjury) in his amended complaint and in his response and separate declaration directly contradict much of the evidence presented by Defendants. Specifically, Plaintiff points to a letter he received from the Office of Corrections Ombuds issued June 12, 2023, which states the following, in relevant part:

> You relayed concerns regarding getting an infraction for refusing the transport bus, but you state you have an HSR for a wheelchair and were forced on the bus rather than getting a special transport. … We have reviewed your complaint, available documentation, and DOC policies related to your concern. We reached out to DOC regarding IGN 32 for the 717 infraction and verified that you do have an active HSR for a wheelchair that was in affect [sic] at the time of the transfer, and you do have a transportation code of 5 which indicates the need for a special transfer, however, this was incorrectly entered into the system, and this resulted in the proper transportation method not being provided. After discussing these concerns with DOC, DOC did decide to overturn the infraction and the IGN 32 has since been removed from your disciplinary record.

Dkt. 10 at 35.

Plaintiff notes that he repeatedly raised his medical issues to the Defendants, indicating that he was not able to walk up the stairs onto the bus, notified them of his wheelchair HSR and T-5 code, and that he had specifically requested special transport due to his medical conditions for his transfer to WSP. Dkt. 33 at 3, 9, 12. He alleges Defendant Veres purported to check the computer regarding Plaintiff's HSRs and that Defendant Gonthier purported to check the computer regarding Plaintiff's medical needs and transportation code. Dkt. 10 at 11; Dkt. 33 at 9. Plaintiff states that this demonstrates Defendants "had full information about his needs but they decided to override and discriminate his accommodation needs[.]" Dkt. 33 at 9. Plaintiff acknowledges that the Ombuds investigation concluded the incorrect T code was entered into the

system, but notes that the T code may have been altered on the date of transport in order to discriminate against him. *Id.*

Plaintiff also attaches copies of several HSRs, including one which is dated 2/22/2023, expiring 2/21/2024, and which specifies, in relevant part, "lower tier", "no upper bunk", "wheelchair", "wheelchair pusher required," "walker[.]" Dkt. 10 at 43. He also includes an HSR dated 7/11/2023, expiring 7/10/2024, which specifies "ADA cell." *Id.* at 46.

Plaintiff also states that, contrary to Defendants' evidence, he screamed in pain and asked them to stop when they forced him to the ground to be put in restraints and subsequently carried, dropped and dragged him onto the bus. Dkt. 33 at 4, 16, 19; Dkt. 34 at 3-5. He states, contrary to Defendants' evidence, that when he arrived at WSP he was still in excruciating pain and that "some officers took me out of the bus in the similar fashion to the health services building." Dkt. 34 at 5. The Court understands this statement to mean that Plaintiff did not walk off the bus but that he was carried off  in a similar fashion to his placement onto the bus.

## DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by

1   establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of

2   persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102

3   (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of

4   material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The

5   Court must draw all reasonable inferences in favor of the nonmoving party.  *Id*. at 585-87.

6          In supporting a factual position, a party must "cit[e] to particular parts of materials in the

7   record . . .; or show[] that the materials cited do not establish the absence or presence of a

8   genuine dispute, or that an adverse party cannot produce admissible evidence to support the

9   fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there

10  is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at

11  585. "[T]he requirement is that there be no *genuine* issue of material fact. . . .  Only disputes over

12  facts that might affect the outcome of the suit under the governing law will properly preclude the

13  entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

14  (emphasis in original). The central issue is "whether the evidence presents a sufficient

15  disagreement to require submission to a jury or whether it is so one-sided that one party must

16  prevail as a matter of law." *Id*. at 251-52.

17         The opposing party must present significant and probative evidence to support its claim

18  or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

19  "The mere existence of a scintilla of evidence in support of the non-moving party's position is

20  not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d

21  1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with

22  allegations in the complaint, or with unsupported conjecture or conclusory statements."

23  *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).

**B.     ADA and RA Claims**

Plaintiff alleges Defendants' actions in denying him access to special transportation to accommodate his disability violated his rights under the ADA and the RA. Plaintiff brings is ADA and RA claims against the entity Defendant Washington Corrections Center (WCC), agency of the Department of Corrections (DOC)

Title II of the ADA and § 504 of the RA both prohibit discrimination on the basis of disability. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); 42 U.S.C. § 12132; 29 U.S.C. § 794(a). The ADA applies only to public entities, whereas the RA proscribes discrimination in all federally funded programs. *Id.* The ADA and the RA apply to state prisons and jails. *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010); *United States v. Georgia*, 546 U.S. 151, 154 (2006); *Pierce v. County of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008).

The ADA provides a "qualified individual with a disability" cannot, "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, the RA provides: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794(a).

"To state a claim of disability[3] discrimination under Title II [of the ADA], the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is

---

[3] The term "disability" under the ADA means, "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing,

otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). To establish a violation of § 504 of the RA, a plaintiff must show that (1) she is an individual with a disability; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her disability; and (4) the program providing the benefit or services receives federal financial assistance. *See Lovell*, 303 F.3d at 1052.

Title II of the ADA and § 504 of the RA include an affirmative obligation for public entities to make benefits, services, and programs accessible to people with disabilities. *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017). Because the elements of ADA and RA claims "do not differ in any respect relevant to the resolution of [this case]," the claims can be addressed together. *See Duvall*, 260 F.3d at 1135-36. "Under both Title II of the ADA and § 504 of the [RA], [Plaintiff] must show that he was excluded from participating in or denied the benefits of a program's services or otherwise discriminated against." *Updike*, 870 F.3d at 950–51.

"[C]ompensatory damages are not available under Title II or § 504 absent a showing of discriminatory intent." *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998), *as amended* (Oct. 8, 1998); *see Duvall*, 260 F.3d at 1138. "To show intentional discrimination, this circuit requires that the plaintiff show that a defendant acted with 'deliberate indifference,' which

hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

REPORT AND RECOMMENDATION - 14

requires 'both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that ... likelihood.'" *Updike*, 870 F.3d at 950–51 (quoting *Duvall*, 260 F.3d at 1139). "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Id.* (quoting *Duvall*, 260 F.3d at 1139). "To meet the second prong, the entity's failure to act 'must be a result of conduct that is more than negligent, and involves an element of deliberateness.'" *Id.* (quoting *Duvall*, 260 F.3d at 1139). "A public entity may be liable for damages under Title II of the ADA or § 504 of the Rehabilitation Act 'if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons.'" *Id.* (quoting *Mark H. v. Lemahieu*, 513 F.3d 922, 937–38 (9th Cir. 2008)).

The Ninth Circuit has explained deliberate indifference as follows:

Because in some instances events may be attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction, we have stated that deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course. Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness.

*Duvall*, 260 F.3d at 1139.

The "failure to provide reasonable accommodation can constitute discrimination[.]" *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). "The question whether a particular accommodation is reasonable 'depends on the individual circumstances of each case' and 'requires a fact-specific, individualized analysis of the disabled individual's circumstances and

the accommodations that might allow him to meet the program's standards.'" *Id.* (quoting *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999)).

"[A] plaintiff may not raise individual-liability claims directly under the ADA or RA." *Hernandez v. Marcelo*, No. 119CV01219, 2020 WL 6075648, at *3 (E.D. Cal. Oct. 15, 2020), *report and recommendation adopted*, No. 119CV01219, 2021 WL 1164400 (E.D. Cal. Mar. 26, 2021); *see also Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials"). However, "[w]hen a plaintiff brings a direct suit under the ADA or the [RA], a public entity is liable in *respondeat superior* for the acts of its employees." *K.T. v. Pittsburg Unified Sch. Dist.*, 219 F. Supp. 3d 970, 981 (N.D. Cal. 2016) (citing *Duvall*, 260 F.3d at 1141 and *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014) (holding that a city may be held liable under the ADA for acts of beat-level officers)).

The failure to provide safe transportation to a disabled prisoner has been found to support a claim under the ADA and RA. *See Epley v. Gonzalez*, 860 F. App'x 310, 314 (5th Cir. 2021) (Plaintiff sufficiently pleaded an ADA and RA claim where he alleged prison officials "knew of his disabilities and the accommodation provided to him based on them [i.e., transportation on a medical van rather than a prison bus], and yet denied him the benefit of … appropriate transportation by ignoring the restrictions entirely."); *Lewis v. Cain*, No. 3:15-CV-318, 2021 WL 1219988, at *55 (M.D. La. Mar. 31, 2021) (holding prison "does have the obligation under the ADA and RA to accommodate disabled inmates in transportation in instances where the need is readily known or knowable, without a formal request."); *Allah v. Goord*, 405 F. Supp. 2d 265, 279 (S.D.N.Y. 2005) (denying motion to dismiss ADA claim where plaintiff alleged prison officials knew or should have known of the dangers wheelchair-bound prisoners are exposed to

when they are transported in an unsafe vehicle and failed to remedy the unsafe transportation conditions by providing training, supervision or new equipment to prison personnel).

The Court first notes that Plaintiff's amended complaint appears to properly bring his ADA and RA claims against the public entity -- Washington Corrections Center (WCC), agency of the Department of Corrections (DOC) -- not against the individual Defendants in their individual capacities. However, as noted above, a public entity is vicariously liable for the actions of its employees under the ADA and RA.[4]

Here, viewing the facts in the light most favorable to Plaintiff, a T-5 code had been entered at the time of Plaintiff's transfer. Plaintiff informed all Defendants he had a wheelchair HSR and significant medical issues that rendered him unable to walk and stand (at least on his own) and prevented him from climbing stairs and being transported on the regular bus, that he had a T-5 code in place requiring a special transport, and that he had also sent a specific request for special transport to WSP to the Captain, CPM and "medical health department."

The Court notes that Mr. Long states in his declaration in support of Defendants' motion that Plaintiff had a T-1 code in place on the date of his transfer. Dkt. 30 at 2. But this assertion conflicts with the letter from the Office of Corrections Ombuds Plaintiff submits with his amended complaint which indicates that their investigation (performed at Plaintiff's request after he was infracted for refusing to transfer) concluded Plaintiff in fact had a T-5 code on the date of his transfer. Dkt. 10 at 35. The letter further indicates that DOC indicated to the Office of Corrections Ombuds that the T code was "incorrectly entered into the system, and this resulted in the proper transportation method not being provided." *Id.* But the source of this information, and

---

[4] To the extent Plaintiff's amended complaint could be construed to bring claims against the individual Defendants in their individual capacities under the ADA and RA, such claims would not be cognizable and would be subject to dismissal.

the basis for this conclusion, is unclear. The letter also does not explain where the information was incorrectly entered or whether the transportation code viewable to the Defendants, if they had checked on the date of Plaintiff's transfer, would have shown T-1 or T-5. [5] Defendants do not adequately address this letter.

The Court notes that the initial serious infraction report states Defendant John Lee "spoke to medical staff Olson-Ward and medical had no concerns with this individual being transported on the bus." *Id.* Plaintiff does not directly dispute this evidence. As the record shows Defendant John Lee relied on the representation of medical professional Nurse Olson-Ward that Plaintiff could be transported by bus, there is no evidence to indicate Defendant John Lee acted "intentionally or with deliberate indifference" in failing to provide meaningful access or reasonable accommodation to the disabled Plaintiff. *Updike*, 870 F.3d at 950–51 (internal citation and quotation marks omitted).

However, the same cannot be said with respect to the remaining individually named Defendants whose actions may form the basis for liability for Plaintiff's ADA and RA claims against the public entity Defendant, WCC – agency of DOC. Viewing the facts in the light most favorable to Plaintiff, Defendants Olson-Ward, Veres, Gonthier, Malone, Howard, Baleto, and Adam Lee either ignored Plaintiff or purported to check the computer regarding Plaintiff's medical needs and transportation code and proceeded with the transport anyway. Defendant Olson-Ward does not submit a declaration or evidence indicating whether she ever checked Plaintiff's medical records or T code status and, if she did, what she found, or whether she

---

[5] The Court also notes that the purpose of the Office of Corrections Ombuds' investigation was to address Plaintiff's complaint regarding the infraction he incurred for allegedly refusing to transfer, not to render a judicial determination on a litigated issue, and thus it is unclear what information or evidence the Office relied upon in reaching their conclusions.

inquired into Plaintiff's specific request for special transportation for his trip to WSP. Furthermore, none of the other named Defendants (Veres, Gonthier, Malone, Howard, Baleto, or Adam Lee) submit declarations or evidence indicating whether they ever checked Plaintiff's medical records or T code status and, if they did, what they found, and whether they inquired into Plaintiff's specific request for special transportation for his trip to WSP. Nor do these other named Defendants submit evidence that they either checked with Defendant Olson-Ward and were told that there were no medical concerns with Plaintiff being transported on the regular bus or that this information was conveyed to them by Defendant John Lee (or anyone else) and that they relied upon it.

With respect to Defendants Olson-Ward, Veres, Gonthier, Malone, Howard, Baleto, and Adam Lee the record is simply too unclear or conflicting regarding what T-code was, in fact, in place, what was reflected in the DOC's records and viewable to Defendants at the time of Plaintiff's transfer, and whether or which Defendants were aware that Plaintiff in fact had a T-5 code or had specifically requested specialized transportation due to his disability for his transfer to WSP. Defendant Gonthier's declaration does not resolve these issues but simply states that "other than his refusal to board the transport bus, [Plaintiff] provided no other comments" and "[a]t no time during the team's interaction with [Plaintiff] were we ever informed or had concerns that he was physically unable to board the transport bus on his own." Dkt. 31 at 3. Furthermore, Defendant Gonthier's statement appears to conflict with the statement made by Defendant John Lee in the initial serious infraction report which indicates Plaintiff "stated [at least to Defendant John Lee] that he was refusing transport to WSP because he was in a wheelchair and was unable to be transported by the Facility chain bus." *Id.* at 36.

REPORT AND RECOMMENDATION - 19

1    If Plaintiff had a T-5 code on the date of his transfer and Defendants Olson-Ward, Veres,

2    Gonthier, Malone, Howard, Baleto, or Adam Lee were aware Plaintiff had a T-5 code, or were

3    put on notice by Plaintiff that he had a T-5 code and either ignored or failed to properly check

4    the status of his T code, or failed to inquired into Plaintiff's specific request for special

5    transportation for his trip to WSP, and simply proceeded with the transport, such actions could

6    demonstrate that they "intentionally or with deliberate indifference fail[ed] to provide

7    meaningful access or reasonable accommodation to [a] disabled person" in violation of the ADA

8    and RA. *Updike*, 870 F.3d at 950–51 (internal citation and quotation marks omitted). Because the

9    record is either unclear or directly conflicting on these issues, the motion for summary judgment

10   should be denied with respect to Plaintiff's ADA and RA claims against Washington Corrections

11   Center (WCC), agency of the Department of Corrections (DOC).

12   **C.    42 U.S.C. § 1983 Claims**

13   Plaintiff also brings claims pursuant to 42 U.S.C. § 1983 alleging the eight individual

14   Defendants (John Lee, Olson-Ward, Veres, Gonthier, Malone, Howard, Baleto, and Adam Lee)

15   violated the Eighth Amendment by acting with deliberate indifferent to a serious medical need

16   and engaging in excessive force.

17   In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that

18   she suffered a violation of rights protected by the Constitution or created by federal statute, and

19   (ii) that the violation was proximately caused by a person acting under color of state law. *See*

20   *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is

21   satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in

22   another's affirmative act, or omitted to perform an act which he was legally required to do that

23

1  caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981)

2  (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

3        "The inquiry into causation must be individualized and focus on the duties and

4  responsibilities of each individual defendant whose acts or omissions are alleged to have caused

5  a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Vicarious

6  liability may not be imposed on a supervisory employee for the acts of their subordinates in an

7  action brought under 42 U.S.C. § 1983. *Lemire v. California Dep't of Corrs. & Rehabilitation*,

8  726 F.3d 1062, 1074 (9th Cir. 2013). A supervisor may, however, be held liable under § 1983 "if

9  he or she was personally involved in the constitutional deprivation or a sufficient causal

10  connection exists between the supervisor's unlawful conduct and the constitutional violation."

11  *Jackson* v. *City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

12        **1.  Eighth Amendment – Deliberate Indifference to a Serious Medical Need**

13        Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to

14  [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical

15  need is serious if failure to treat it will result in 'significant injury or the unnecessary and wanton

16  infliction of pain.'" *Peralta v. Dillard*, 744 F.3d 1076, 1081–82 (9th Cir. 2014) (quoting *Jett v.

17  Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (additional internal quotation marks and citation

18  omitted).

19        To maintain an Eighth Amendment medical claim, a prisoner-plaintiff must first "show a

20  serious medical need by demonstrating that failure to treat a prisoner's condition could result in

21  further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff

22  must show the defendants' response to the need was deliberately indifferent." *Wilhelm v.

23

1    *Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks

2    omitted)).

3         "Indications that a plaintiff has a serious medical need include the existence of an injury

4    that a reasonable doctor or patient would find important and worthy of comment or treatment;

5    the presence of a medical condition that significantly affects an individual's daily activities; or

6    the existence of chronic or substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir.

7    2014) (citation and internal quotation marks omitted); *accord Wilhelm*, 680 F.3d at 1122.

8         Deliberate indifference is shown where a prison official "knows that inmates face a

9    substantial risk of serious harm and disregards that risk by failing to take reasonable measures to

10   abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "Under this standard, the prison official

11   must not only 'be aware of the facts from which the inference could be drawn that a substantial

12   risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*,

13   391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

14        In medical cases, this requires a showing of: "(a) a purposeful act or failure to respond to

15   a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm*,

16   680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "More generally, deliberate indifference may

17   appear when prison officials deny, delay or intentionally interfere with medical treatment, or it

18   may be shown by the way in which prison physicians provide medical care." *Id.* (internal

19   quotation marks omitted). A "prisoner need not show his harm was substantial." *Id.* (internal

20   quotation marks omitted); *see also McGuckin*, 974 F.2d at 1060 ("[A] finding that the

21   defendant's activities resulted in 'substantial' harm to the prisoner is not necessary.").

22        Here, Plaintiff submits facts that he had long-term preexisting medical conditions

23   including back injury, chronic leg pain, and a recently broken shoulder, that he required a

1  wheelchair and that he was unable to walk up stairs. He states he informed Defendants of this

2  and that he had a T-5 code and had specifically requested specialized transportation based upon

3  his disability/medical issues for his transfer to WSP. Defendants submit evidence that a "T-1"

4  code indicates that the medical provider believes the individual can get themselves onto the

5  transport bus while a "T-5" code is entered by the medical provider only when a patient requires

6  a wheelchair van or another special transport vehicle. Defendants appear to acknowledge that a

7  T-5 code reflects a medical determination the individual cannot get themselves onto the transport

8  bus and a special transport vehicle is required. Thus, if Plaintiff had a T-5 code on the date of his

9  transfer and Defendants were aware Plaintiff had a T-5 code, or were put on notice by Plaintiff

10 that he had a T-5 code and either ignored or failed to properly check the status of his T code, or

11 failed to inquired into Plaintiff specific request for special transportation for his trip to WSP, and

12 simply proceeded with the transport, such actions could demonstrate deliberate indifference to a

13 serious medical need.

14     Plaintiff submits facts that he informed Defendants of his medical conditions and that he

15 had a T-5 code, required a wheelchair, and was unable to walk up stairs. He contends that

16 Defendants either ignored him or failed to properly check Plaintiff's medical records and

17 transportation code and specific request for specialized transport to WSP and proceeded with the

18 transport anyway. Such actions could constitute deliberate indifference to a serious medical need.

19 Plaintiff alleges that in being forcibly carried, dragged, and dropped, up the stairs and onto the

20 bus, because he was physically unable to climb the stairs onto the bus, he suffered exacerbation

21 to his back injury and extreme pain to his knees and recently broken shoulder and had to seek

22 further treatment and adjustments or increases in pain medication. Furthermore, even setting

23 aside the issue of the T-5 code, if it became clear Plaintiff was, in fact, physically unable to stand

REPORT AND RECOMMENDATION - 23

and walk up the stairs to the bus due to his medical conditions as he claims and as he claims he

informed Defendants, Defendants' actions in proceeding to carry, drop and drag Plaintiff up the

stairs and onto the bus could constitute deliberate indifference to a serious medical need. *See,*

*e.g., Alarcon v. Davey*, No. 116CV01461JLTPC, 2018 WL 1316934, at *6 (E.D. Cal. Mar. 14,

2018), *report and recommendation adopted*, No. 116CV01461, 2018 WL 1744733 (E.D. Cal.

Apr. 11, 2018) (alleged efforts by prison officials to force Plaintiff to walk to medical, "despite

his obvious injuries and the pain that it caused him, merely to be noted as 'ambulatory' upon

arrival", stated cognizable Eight Amendment claim for "deliberate indifference to Plaintiff's

serious medical needs and/or risk of serious harm" and allegations against prison officials for

"carrying Plaintiff by his elbows and feet, dropping him, and then half-carrying half-dragging

Plaintiff instead of using a wheelchair [to transport Plaintiff] when Plaintiff had advised them of

everywhere he was hurting and his inability to stand, let alone walk, also states a cognizable

claim under the Eighth Amendment" for deliberate indifference to a serious medical need).

  With respect to Defendant John Lee, the record shows that he "spoke to medical staff

Olson-Ward and medical had no concerns with this individual being transported on the bus."

Dkt. 31 at 36. Plaintiff does not appear to dispute or submit evidence to contradict this specific

evidence with respect to Defendant John Lee. Thus, the record shows Defendant John Lee

reasonably relied on the assurance of medical staff in proceeding with Plaintiff's transport and

did not act with deliberate indifference to Plaintiff's serious medical need. Accordingly,

Defendants' motion for summary judgment should be granted with respect to Plaintiff's Eighth

Amendment medical care claim against Defendant John Lee and that claim should be dismissed

with prejudice.

However, as noted above, Defendant Olson-Ward does not submit a declaration or evidence indicating whether she ever checked Plaintiff's medical records or T code status and, if she did, what she found, or whether she inquired into Plaintiff's specific request for special transportation for his trip to WSP. Furthermore, none of the other named Defendants (Veres, Gonthier, Malone, Howard, Baleto, or Adam Lee) submit declarations or evidence indicating whether they ever checked Plaintiff's medical records or T code status and, if they did, what they found, and whether they inquired into Plaintiff's specific request for special transportation for his trip to WSP. Nor do these other named Defendants submit evidence that they either checked with Defendant Olson-Ward and were told that there were no medical concerns with Plaintiff being transported on the regular bus or that this information was conveyed to them by Defendant John Lee (or anyone else) and that they relied upon it. [6]

Accordingly, because the record is either unclear or conflicting on these issues, Defendants fail to meet their burden and the motion for summary judgment should be denied with respect to Plaintiff's Eighth Amendment medical claims against Defendants Olson-Ward, Veres, Gonthier, Malone, Howard, Baleto, and Adam Lee.

### 2. Eighth Amendment - Excessive Force

When a prison official is accused of using excessive physical force against an inmate in violation of the Eighth Amendment, the central inquiry is "whether force was applied in a good-

---

[6] The Court notes that Plaintiff does allege that Defendant Nurse Olson-Ward at some point indicated to the other Defendants that Plaintiff "did not have a wheelchair HSR." However, Plaintiff submits facts that in order to have a wheelchair, which he was sitting in, he would need a wheelchair HSR, and that he did, in fact have such an HSR. Furthermore, there is no evidence submitted by Defendants Olson-Ward, Veres, Gonthier, Malone, Howard, Baleto, or Adam Lee, indicating that they in fact checked Plaintiff's medical records, T code status, or specific request for specialized transport to WSP or, with respect to Defendants Veres, Gonthier, Malone, Howard, Baleto, and Adam Lee, that they reasonably relied on a Defendant Olson-Ward's assurance that there were no medical concerns with Plaintiff being transported. The record is simply too unclear on these issues for Defendants to meet their burden at summary judgment.

1    faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

2    *Hudson v. McMillian,* 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers,* 475 U.S. 312, 320–21

3    (1986)). Excessive force may amount to cruel and unusual punishment even when the inmate

4    does not suffer serious injury. *Id.* at 9–10. In deciding whether the use of force was wanton and

5    unnecessary, the court will consider factors such as the extent of any injury, the need for the use

6    of force, whether that need supports the amount of force used, the threat reasonably perceived by

7    the responsible officials, and "any efforts made to temper the severity of a forceful response." *Id.*

8    at 7 (quoting *Whitley,* 475 U.S. at 321). Furthermore, "a prison official can violate a prisoner's

9    Eighth Amendment rights by failing to intervene." *Robins v. Meecham,* 60 F.3d 1436, 1442 (9th

10    Cir. 1995) (citing *Del Raine v. Williford,* 32 F.3d 1024, 1038 (7th Cir.1994) ("A failure of prison

11    officials to act in such circumstances suggests that the officials actually wanted the prisoner to

12    suffer the harm.") and *Buckner v. Hollins,* 983 F.2d 119, 123 (8th Cir. 1993) ("[Defendant's]

13    failure to intervene in order to stop [Plaintiff's] beating ... would provide an ample basis for a

14    jury to conclude that [Defendant] ... violated [Plaintiff's] Eighth Amendment rights.")).

15         Here, Plaintiff submits facts that, despite being placed on notice regarding Plaintiff's

16    medical issues, his inability to climb the stairs onto the bus, his T-5 code and his specific request

17    for special transport to WSP, Defendants forced him to his knees, placed him in too-tight

18    handcuffs and leg chains, grabbed Plaintiff by the elbows and feet, picked him up from his

19    wheelchair and carried him face-down, while Plaintiff screamed in pain and asked them to stop.

20    Plaintiff submits facts that Defendants dragged him, picked him up and dropped him and then

21    half-carried and half-dropped him onto the bus. Plaintiff also submits facts that he was taken off

22    the bus in a similar manner to which he was placed on the bus. Plaintiff submits facts that

23    because of Defendants' actions, he suffered exacerbation to his back injury and extreme pain to

his knees and recently broken shoulder and had to seek further treatment and adjustments or increases in pain medication.

Defendants submit conflicting evidence indicating that Plaintiff refused to stand and walk up the steps to the transport bus and presented as 'dead weight' refusing to walk. They present evidence from Defendant Gonthier that other than his refusal to board the bus Plaintiff provided no other comments and "[a]t no time during the teams interaction with [Plaintiff[, were [Defendants] ever informed or had concerns that he was physically unable to board the transport bus on his own." Dkt. 31 at 3. They present evidence that they maintained control of Plaintiff's left shoulder and left wrist while guiding Plaintiff to his knee and then applied straight chain restraints. They present evidence that Plaintiff resisted multiple staff directives and was demonstrating passive resistance by causing his body to go limp. They present evidence that they lifted plaintiff by placing an arm under his armpit and placing hands around his ankle and leg area to lift plaintiff onto the bus. They contend only the amount of force necessary was used. They also note that the incident report from Plaintiff's arrival at WSP reflected that Plaintiff was able to walk off the bus with assistance.

In sum, the record contains conflicting evidence regarding the extent of any injury, the need for the use of force, whether that need supports the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. [7]

---

[7] The Court notes that the Use of Force Report appears to reflect that some of the Defendants may have had more limited involvement in the incident that forms the basis of Plaintiff's Eighth Amendment excessive force claims. But Defendants do not move to dismiss any individual Defendants based on lack of personal participation and, as noted above, in excessive force cases a prison official can also violate a prisoner's Eighth Amendment rights by failing to intervene. *See Robins*, 60 F.3d at 1442. Plaintiff submits facts that he informed all of the Defendants regarding his T-5 code, medical issues, his physical inability to climb the stairs to the bus, his specific request for special transportation to WSP, and that he was crying out in pain and asking the Defendants to stop as he was physically carried and dragged onto

Accordingly, Defendants fail to meet their burden and the motion for summary judgment should be denied with respect to Plaintiff's Eighth Amendment excessive force claims. However, because it appears from the record that a video may exist with respect to this incident that was not submitted but could, potentially, be dispositive with respect to Plaintiff's excessive force claims, the Court recommends Defendants' motion be denied without prejudice with respect to these claims. [8]

**D.    Qualified Immunity**

Defendants argue they are entitled to qualified immunity on the grounds that:

> [Plaintiff's] Health Status Report indicated that he was able to walk and he also had a "T-1" T code which would have indicated that he could ambulate into a vehicle or bus for transport without the need for a specially equipped vehicle. … Moreover, while an incarcerated individual may present in a wheelchair, it does not necessarily mean that they are completely immobile. There are incarcerated individuals who may use wheelchairs to provide assistance in mobility for longer distances such as getting from a housing unit to a receiving unit. … The Defendants' decisions and actions were based on the records before them and they had no reason to believe they were inaccurate. Because there are not facts to show any of these Defendants were in violation of a clearly established law and the Defendants reasonably believed their actions were lawful, they are entitled to qualified immunity.

Dkt. 29 at 11-12.

As discussed above, the Court has recommended that summary judgment be granted on the merits with respect to Plaintiff's Eighth Amendment medical care claims against Defendant John Lee. However, as discussed above, with respect to Defendants Olson-Ward, Veres, Gonthier, Malone, Howard, Baleto, and Adam Lee, the record is unclear or conflicting as to

---

the bus. Absent additional argument and evidence, the Court cannot conclude any Defendant is entitled to summary judgment on these claims.

[8] The Court notes that this should not be interpreted by Defendants as an invitation to file another summary judgment motion with respect to Plaintiff's excessive force claims based on the same arguments and evidence.

REPORT AND RECOMMENDATION - 28

1   whether Plaintiff informed Defendants of his medical issues, that he had a T-5 code in place

2   indicating he medically required specialized transportation and that he had specifically requested

3   specialized transportation for his transfer to WSP, what T code Plaintiff in fact had in place on

4   the date of his transfer, whether a T-5 code was entered into the DOC's system or otherwise

5   viewable by Defendants at the time of Plaintiff's transfer, and whether any of the Defendants

6   checked the T-code, Plaintiff's medical records, or inquired into Plaintiff specific request for

7   special transportation for his trip to WSP, prior to transporting him. And, with respect to

8   Defendants Veres, Gonthier, Malone, Howard, Baleto, and Adam Lee, there is no evidence that

9   they checked with Defendant Olson-Ward and were told that there were no medical concerns

10  with Plaintiff being transported on the regular bus or that this information was conveyed to them

11  by Defendant John Lee (or anyone else) and that they relied upon it.

12      Moreover, there is conflicting evidence in the record regarding the extent of any injury to

13  Plaintiff caused by the use of force in this case, the need for the use of force, whether that need

14  supported the amount of force used, the threat reasonably perceived by the responsible officials,

15  and whether any efforts were made to temper the severity of a forceful response.

16      Because the record before the Court is either unclear or conflicting with respect to these

17  issues, Defendants fail to establish they are entitled to qualified immunity on Plaintiff's

18  remaining claims.[9]

19                              **CONCLUSION**

20      For the foregoing reasons, the Court recommends that Defendants' motion for summary

21

22  _____

23  [9] The Court notes that Defendants do not argue that they would be entitled to qualified immunity if, for
    instance, a T-5 code were in place and they were aware it was in place and proceeded to transport Plaintiff
    anyway, or if they were on notice the T-5 code was in place but refused to check the records and
    proceeded to transport Plaintiff anyway.

REPORT AND RECOMMENDATION - 29

judgment (Dkt. 29) be GRANTED with respect to Plaintiff's Eighth Amendment medical care claim against Defendant John Lee only and that that claim be DISMISSED with prejudice. The Court recommends that Defendants' motion for summary judgment (Dkt. 29) be DENIED in all other respects but that it be DENIED without prejudice with respect to Plaintiff's Eighth Amendment excessive force claim against the individual Defendants.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **May 22, 2024.** The Clerk should note the matter for **May 24, 2024**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. The failure to timely object may affect the right to appeal.

DATED this 1st day of May, 2024.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 30